# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ROBERT WRIGHT                                                      CIVIL ACTION

VERSUS                                                                  NO. 19-10652

ROBERT TANNER, ET AL.                                      SECTION: "F"(1)


## REPORT AND RECOMMENDATION

Plaintiff, Robert Wright, a state prisoner, filed this federal civil action against the Rayburn Correctional Center and its warden, Robert Tanner, pursuant to 42 U.S.C. § 1983.[1]  In the complaint, plaintiff stated his claims as follows:

> Petitioner is currently being denied the right to religious material in violation of the I, V, and VII Amendment of the United States constitution.  Petitioner received, via U.S. Mail, a Bile [sic] Study publication, "Faded Blue Jean Ministry", and "Jimmy Swaggart Ministries".  Rayburn Correctional Center has based this fact from the use of a posted policy #34.  This policy is being misconstrued and does not stipulate that offenders are to be denied the right to religious publication while on maximum custody.  Therefore Petitioner's rights are being currently denied and the Petitioner seeks punitive, compensatory, monetary and court cost against Rayburn Correctional center for denying Petitioner the right to religious publication.[2]

---

[1] In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

[2] Rec. Doc. 1, p. 3.  The Court is construing plaintiff's complaint as asserting only First Amendment violations. Although he also referenced the Fifth and Seventh Amendments, only the First Amendment is seemingly implicated by his factual allegations, and his passing, unadorned citations to the other amendments are obviously insufficient to state claims under those provisions.  Further, because he clearly indicated that he is asserting only constitutional claims, the Court does not interpret the complaint as asserting statutory claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5.  However, in any event, the Court notes that plaintiff has sought only monetary damages in this civil action, and it is clear that "[a]n inmate is not entitled to monetary damages under RLUIPA for a suit brought against a correctional officer in his individual capacity." McCreary v. Richardson, 738 F.3d 651, 655 (5th Cir. 2013).  Further, a state and its employees in their official capacities enjoy sovereign immunity with respect to RLUIPA claims for monetary damages.  See Copeland v. Livingston, 464 F. App'x 326, 330 (5th Cir. 2012).

Plaintiff attached to his complaint copies of several notices he received from prison officials advising him that (1) the prison was in receipt of various publications mailed to him by religious organizations, (2) the prison's policies prohibit him from receiving such publications while he is confined on maximum lockdown, and (3) the publications would be destroyed unless he had them forwarded elsewhere, picked up by a visitor, or donated to the prison library.  In his prayer for relief, plaintiff requested $200,000.00 in monetary damages.

The defendants have filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[3]  Plaintiff has opposed that motion.[4]

### I.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Association of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

The defendants argue that the Eleventh Amendment deprives the Court of subject-matter jurisdiction over the claims for monetary damages asserted against Robert Tanner in his official capacity.  They are correct.

---

[3] Rec. Doc. 8.
[4] Rec. Doc. 10.

Tanner, who serves as the Warden of the Rayburn Correctional Center, is an employee the Louisiana Department of Public Safety and Corrections.    "A suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment."  Chaney v. Louisiana Work Force Commission, 560 F. App'x 417, 418 (5th Cir. 2014); accord Williams v. Thomas, 169 F. App'x 285, 286 (5th Cir. 2006); Watson-Buisson v. Louque, Civ. Action No. 12-1871, 2013 WL 5236611, at *1 (E.D. La. Sept. 13, 2013).[5] "When the Eleventh Amendment applies, [federal] courts lack subject-matter jurisdiction over the claim."  Bryant v. Texas Department of Aging and Disability Services, 781 F.3d 764, 769 (5th Cir. 2015).

Accordingly, the defendants' motion should be granted with respect to the official-capacity claims against Tanner for monetary damages, and those claims should be dismissed without prejudice for lack of subject-matter jurisdiction.

## II.  Rule 12(b)(6)

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted.  In ruling on such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted).  However, "[t]o

---

[5] As the United States Fifth Circuit Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. ...  By statute, Louisiana has refused any ... waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court.  See La.Rev.Stat.Ann. § 13:5106(A).
>
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power.  We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted); Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 313-14 (5th Cir. 1999).

survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citation, footnote, and quotation marks omitted).  On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## A.  Individual-Capacity Claims Against Robert Tanner

As to any claims for monetary damages asserted against Robert Tanner in his individual capacity, the defendants argue that Tanner is entitled to qualified immunity.  They are likewise correct on that point.

The United States Fifth Circuit Court of Appeals has held:

> To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  When … a qualified immunity defense is asserted in a motion to dismiss, the district court must – as always – do no more than determine whether the plaintiff has filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone.
> A plaintiff is required by his pleadings to state facts which, if proved, would defeat a claim of immunity.  The purpose of requiring such allegations is, of course, to permit the trial court, and our court on review, if necessary, to implement a qualified immunity defense at the earliest possible stage of litigation. As is well-established, qualified immunity means immunity from having to stand trial, not simply immunity from monetary liability.

Westfall v. Luna, 903 F.3d 534, 542 (5th Cir. 2018) (citations, quotation marks, brackets, and ellipsis omitted).  The Fifth Circuit has further explained:

The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. It is an affirmative defense; once properly raised by the defendant, the "plaintiff has the burden to negate the assertion of qualified immunity. To establish that qualified immunity does not apply, [the plaintiff] must prove [the defendant] (1) violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.

King v. Handorf, 821 F.3d 650, 653 (5th Cir. 2016) (citations, quotation marks, and brackets omitted).

Here, plaintiff alleges that, while he remains confined in maximum lockdown, a prison policy prohibits him from receiving publications from religious organizations. Liberally construed,[6] his complaint implicates two rights protected by the First Amendment: (1) the right to receive information through the mail;[7] and (2) the right to the free exercise of religion.[8]

The defendants do not dispute that the alleged policy exists; rather, they argue that the policy is constitutional. In support of their argument, they cite Beard v. Banks, 548 U.S. 521 (2006), and Tyson v. LeBlanc, Civ. Action No. 10-1174, 2010 WL 5375955 (E.D. La. Nov. 19, 2010), adopted, 2010 WL 5376330 (E.D. La. Dec. 15, 2010), aff'd, 431 F. App'x 371 (5th Cir. 2011). Both Banks and Tyson did in fact uphold challenges to prison policies limiting the receipt of publications by inmates confined in restricted housing units due to violations of prison disciplinary rules.

In Beard, the Supreme Court "consider[ed] whether a Pennsylvania prison policy that denie[d] newspapers, magazines, and photographs to a group of specially dangerous and

---

[6] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[7] See, e.g., Frazier v. Ortiz, 417 F. App'x 768, 773 (10th Cir. 2011) ("The First Amendment protects a prisoner's right to receive mail."); Jackson v. Pollard, 208 F. App'x 457, 460 (7th Cir. 2006) ("Inmates retain a First Amendment right to receive information through the mail ….").

[8] See, e.g., Butts v. Martin, 877 F.3d 571, 584 (5th Cir. 2017) ("Lawful incarceration inherently involves the limitation of many privileges and rights, but prisoners still benefit from some constitutional protections, including the First Amendment directive that no law shall prohibit the free exercise of religion." (quotation marks omitted)).

recalcitrant inmates violate[d] the First Amendment." Beard, 548 U.S. at 524-25 (quotation marks

omitted). In a plurality opinion, Justice Breyer found that the policy was constitutional.

    Justice Breyer first observed:

> Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and
> Overton v. Bazzetta, 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003),
> contain the basic substantive legal standards governing this case. This Court
> recognized in Turner that imprisonment does not automatically deprive a prisoner
> of certain important constitutional protections, including those of the First
> Amendment. 482 U.S., at 93, 107 S.Ct. 2254; see also O'Lone v. Estate of Shabazz,
> 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). But at the same time
> the Constitution sometimes permits greater restriction of such rights in a prison than
> it would allow elsewhere. See, *e.g.,* Turner, *supra,* at 84-85, 107 S.Ct. 2254. As
> Overton (summarizing pre-Turner case law) pointed out, courts owe "substantial
> deference to the professional judgment of prison administrators." 539 U.S., at 132,
> 123 S.Ct. 2162. And Turner reconciled these principles by holding that restrictive
> prison regulations are permissible if they are "'reasonably related' to legitimate
> penological interests," 482 U.S., at 87, 107 S.Ct. 2254, and are not an "'exaggerated
> response'" to such objectives, ibid.
>
>     Turner also sets forth four factors "relevant in determining the
> reasonableness of the regulation at issue." Id., at 89, 107 S.Ct. 2254. First, is there
> a "'valid, rational connection' between the prison regulation and the legitimate
> governmental interest put forward to justify it"? Ibid. Second, are there
> "alternative means of exercising the right that remain open to prison inmates"? Id.,
> at 90, 107 S.Ct. 2254. Third, what "impact" will "accommodation of the asserted
> constitutional right ... have on guards and other inmates, and on the allocation of
> prison resources generally"? Ibid. And, fourth, are "ready alternatives" for
> furthering the governmental interest available? Ibid.

Beard, 548 U.S. at 528-29.

    As to the first factor, Justice Breyer noted that one of the "penological rationales" for the

challenged policy was to motivate "particularly difficult prisoners" to exhibit better behavior.

Finding that the evidence showed that the policy did in fact serve that function, Justice Breyer

concluded: "The articulated connections between newspapers and magazines, the deprivation of

virtually the last privilege left to an inmate, and a significant incentive to improve behavior, are

logical ones. Thus, the first factor supports the Policy's 'reasonableness.'" Id. at 531-32.

6

As to the second factor, Justice Breyer found that no "alternative means of exercising the right" remained open to the prisoners, but he noted:  "The absence of any alternative thus provides some evidence that the regulations are unreasonable, but is not conclusive of the reasonableness of the Policy."  Id. at 532 (quotation marks and brackets omitted).

As to the third factor, Justice Breyer found:

> [W]ere prison authorities to seek to accommodate the asserted constitutional right, the resulting impact would be negative.  That circumstance is also inherent in the nature of the Policy:  If the Policy (in the authorities' view) helps to produce better behavior, then its absence (in the authorities' view) will help to produce worse behavior, *e.g.,* "backsliding" ….

Id. (citation, quotation marks, brackets, and ellipsis omitted).

As to the fourth factor, Justice Breyer found that there was no evidence of an "alternative method of accommodating the claimant's constitutional complaint that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests."  Id. (ellipsis omitted).

Justice Breyer then concluded:

> The real task in this case is not balancing these factors, but rather determining whether the Secretary shows more than simply a logical relation, that is, whether he shows a *reasonable* relation.  We believe the material presented here by the prison officials is sufficient to demonstrate that the Policy is a reasonable one.

Id. at 533.[9]

In Tyson, the second case cited by the defendants, United States Magistrate Judge Joseph C. Wilkinson, Jr., issued a Report and Recommendation in which he concluded that the very policy challenged herein was constitutional.  He observed:

> Inmates in Extended Lockdown Level 1 are prohibited from possessing photographs, television, newspapers, magazines and radios.  Prisoners in Extended Lockdown Level 2 may have photographs and limited access to television.  Inmates in the working cell block may also have a "walk-man" type of radio or CD player.

---

[9] Justice Beyer's opinion was joined by Chief Justice Roberts and Justices Kennedy and Souter.  Justices Thomas and Scalia concurred only in the judgment of the Court, rejecting the analysis of the plurality opinion.  Justices Stevens and Ginsburg dissented, and Justice Alito took no part in the consideration or decision of the case.

Thus, possession of photographs, newspapers, magazines and radios and access to
television are privileges, which must be earned and are awarded to prisoners who
do not have major disciplinary problems.  Withdrawal of privileges is intended to
encourage better behavior on the part of inmates, like [plaintiff], who have
extensive disciplinary conduct records. Inmates in Extended Lockdown Level 1
have few other privileges to lose.

The evidence establishes that the challenged regulations are reasonably
related to legitimate penological interests.  Valid, rational connections exist
between the prison regulations that restrict the access of inmates in Extended
Lockdown Level 1, including [plaintiff], to reading materials, radio and television
and the legitimate governmental interests that defendants have put forward to
justify the regulations.  Defendants have asserted reasons of safety, security,
punishment for bad behavior and the reward of privileges for improved behavior.

Tyson v. LeBlanc, Civ. Action No. 10-1174, 2010 WL 5375955, at *11-12 (E.D. La. Nov. 19,

2010).  Magistrate Judge Wilkinson then went on to conclude that, in light of Beard, the defendants

were entitled to qualified immunity:

Defendants argue that the Supreme Court's decision in Beard … precludes
a finding that the law was clearly established that depriving [plaintiff] of
newspapers, magazines, radio and television as a part of the prison's disciplinary
process violated the First Amendment.  Whether a constitutional right is clearly
established is a purely legal question.  Nance v. New Orleans & Baton Rouge S.S.
Pilots' Ass'n, 174 F. App'x 849, 852 (5th Cir. 2006) (citing Siegert v. Gilley, 500
U.S. 226, 232 (1991)); Frazier v. Hataway, 58 F. App'x 595, 2003 WL 261768, at
*1 (5th Cir. 2003); Kinney v. Weaver, 301 F.3d 253, 261 (5th Cir. 2002).  The
Supreme Court held in Beard in 2006 that the specific conduct of which [plaintiff]
complains, based on the same legitimate penological purposes that defendants have
asserted here and in similar factual circumstances, did *not* violate the First
Amendment.  That opinion has not been overruled or called into question by either
the Supreme Court or the Fifth Circuit.  Thus, the constitutional right that [plaintiff]
claims was not clearly established and defendants would not have understood that
what they were doing violated that right.

Tyson, 2010 WL 5375955, at *14.  United States District Judge Helen G. Berrigan thereafter

adopted Magistrate Judge Wilkinson's Report and Recommendation.  Tyson v. LeBlanc, Civ.

Action No. 10-1174, 2010 WL 5376330 (E.D. La. Dec. 15, 2010).  The United States Fifth Circuit

Court of Appeals then affirmed that decision.  Tyson v. LeBlanc, 431 F. App'x 371 (5th Cir. 2011)

("With respect to his claim regarding restrictions on inmate purchases of reading materials and

radios, his attempt to distinguish Beard v. Banks, 548 U.S. 521, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006), is unavailing, and he has, therefore, failed to show the district court erred in granting summary judgment in favor of the defendants on this claim.").

Considering the foregoing, the undersigned likewise finds that defendant Tanner is entitled to qualified immunity with respect to the claim that the challenged policy unconstitutionally infringes on plaintiff's First Amendment right to receive publications through the mail.

However, even if that conclusion is adopted by the District Judge herein, another issue nevertheless remains:  whether the challenged policy infringes on plaintiff's First Amendment right to the free exercise of his religion.  On that issue, Beard and Tyson provide only limited guidance because those cases involved no such claim.  See Beard, 548 U.S. at 526 (noting that although the prisoners subject to the policy had "no access to newspapers, magazines, or personal photographs," they were "nonetheless permitted legal and personal correspondence, *religious* and legal *materials*, two library books, and writing paper" (emphasis added)); Tyson, 2010 WL 5375955, at *1 ("[N]o claim related to any deprivation of *religious* materials is asserted in this case.") and *2 ("I reiterate that no religious exercise claim is encompassed in this lawsuit.").

That said, it must be noted that in evaluating whether the challenged policy violates plaintiff's right to the free exercise of his religion, the Court nevertheless still looks to the very same Turner standard and four-factor analysis discussed above.  DeMarco v. Davis, 914 F.3d 383, 388-89 (5th Cir.), cert. denied, 2019 WL 4923261 (U.S. Oct. 7, 2019); Butts v. Martin, 877 F.3d 571, 585-86 (5th Cir. 2017).  And for the reasons already discussed, the challenged policy survives that analysis because, again, it is reasonably related to a legitimate penological interest, i.e. maintaining order and security by punishing bad behavior and incentivizing recalcitrant prisoners to improve their behavior.

If anything, even a stronger case could arguably be made for the policy's reasonableness with respect to the free-exercise claim.  For example, the United States Supreme Court has noted: "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation."  Turner, 482 U.S. at 90 (citation, quotation marks, and ellipsis omitted).  Here, it must be noted that Christians have been practicing their faith in a variety of ways (such as by engaging in prayer, keeping the Commandments, confessing their sins, performing penance for their transgressions, professing their faith, spreading the Gospel, acting with humility, and abstaining from worldly temptations) for two millennia, long before publications such as the ones at issue in this case even existed.  Where, as here, a policy restricts one aspect of a prisoner's belief system but he retains the ability to participate in other religious observances of his faith, the policy is often considered reasonable.  McAlister v. Livingston, 348 F. App'x 923, 932 (5th Cir. 2009).  Further, the policy at issue in the instant case is content-neutral and prohibits inmates on maximum lockdown from receiving *all* publications, whether religious or secular.  That is likewise an important consideration, because "[w]here a regulation restricts First Amendment rights in a neutral fashion, it is more likely to withstand judicial scrutiny."  Id.

Therefore, even assuming that plaintiff possesses a sincere religious belief that reading Christian publications is an important part of practicing Christianity,[10] the Court finds that Tanner could reasonably believe that the policy in question is nevertheless constitutional.  Accordingly, he is also entitled to qualified immunity with respect to the claim that the policy infringes on plaintiff's First Amendment right to the free exercise of his religion.

---

[10] "To fall within the purview of the Free Exercise Clause, a claimant must possess a sincere religious belief." DeMarco, 914 F.3d at 388.

For all these reasons, the defendants' motion should be granted with respect to the individual-capacity claims against Tanner for monetary damages, and those claims should be dismissed with prejudice.

### B.  Claims Against the Rayburn Correctional Center

Lastly, the defendants argue that the Rayburn Correctional Center is an improper defendant.  Again, they are correct.  "A prison may not be sued because it is merely a building, not a 'person' subject to suit under 42 U.S.C. § 1983."  Sanders v. Rayburn Correctional Center, Civ. Action No. 13-6122, 2014 WL 2700848, at *2 (E.D. La. June 13, 2014); accord Hodge v. B.B. Sixty Rayburn Correctional Center, Civ. Action No. 08-3193, 2008 WL 4628586, at *3 (E.D. La. Oct. 16, 2008); Thomas v. Rayburn Correctional, Civ. Action No. 07-9203, 2008 WL 417759, at *2 (E.D. La. Feb. 13, 2008); Carlisle v. Rayburn Correctional Center, Civ. Action No. 07-451, 2007 WL 550054, at *2 (E.D. La. Feb. 16, 2007).

Accordingly, the defendants' motion should be granted with respect to the claims against the Rayburn Correctional Center, and those claims should be dismissed with prejudice.

### RECOMMENDATION

It is therefore **RECOMMENDED** that the defendants' motion to dismiss, Rec. Doc. 8, be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's official-capacity claims against Robert Tanner for monetary damages be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**IT IS FURTHER RECOMMENDED** that plaintiff's individual-capacity claims against Robert Tanner for monetary damages be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that plaintiff's claims against the Rayburn Correctional Center for monetary damages be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this   2nd   day of December, 2019.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**